IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIG DOG ENERGY, LLC, and SANDY ENERGY, L.P., ) ) ) Plaintiffs, ) ) vs. ) ) PRIMEBLOCK OPERATIONS LLC, ) PRIMEBLOCK MINING LLC, FLAMINGO ) DIGITAL TECHNOLOGIES INC., ANKR ) PBC, and EXPONENTIAL DIGITAL LLC, ) doing business jointly as "PRIMEBLOCK" ) ) Defendants. ) | Civil Action No. 3:22-cv-203 Judge Stephanie L. Haines |

## **OPINION**

Pending before the Court is a Motion to Dismiss (ECF No. 18) filed by Defendant Flamingo Digital Technologies, Inc. ("Flamingo"), to which Defendants Primeblock Operations LLC, Primeblock Mining LLC, Ankr PBC, and Exponential Digital LLC have filed a joinder (ECF No. 20). By way of background, Plaintiff Big Dog Energy, LLC, and Sandy Energy, L.P. (referred to collectively by the parties as "Big Dog") commenced this action against Defendants by filing a Complaint in the Court of Common Pleas of Clearfield County, Pennsylvania on October 7, 2022 (ECF No. 1-2) alleging claims for breach of contract (Count I) and declaratory judgment (Count II). Big Dog alleges that Defendants breached the terms of a written Gas Purchase Agreement and an oral Services Contract between the parties by refusing to pay outstanding balances and invoices owed to Big Dog by Defendants relating to data mining operations at certain natural gas wells located in Clearfield County, Pennsylvania.

On November 10, 2022, Defendant Flamingo removed the matter to this Court on the basis of diversity jurisdiction (ECF No. 1). Defendant Flamingo now moves to dismiss the Complaint

by arguing the Complaint engages in "group pleading" by treating Defendants as a single entity without alleging how each entity breached the alleged contracts between the parties, and further, that the Complaint fails to adequately allege the existence of the oral services contract. For the foregoing reasons, the Motion will be GRANTED in PART and DENIED in part.

I.  **Factual and Procedural Background**

The following facts are accepted as true for the purpose of the pending motion to dismiss (ECF No. 18):

On or about October 2021, Defendants and Big Dog entered into certain agreements for the purpose of establishing data mining operations at the Hegarty, Erickson, Cowfer, and River Hill Power natural gas wells, which were operated by Big Dog Energy, LLC in Clearfield County, Pennsylvania (the "Wells") (ECF No. 1-2 at ¶12). The Complaint alleges Defendants orally agreed that Big Dog would supply natural gas to power Defendants' data mining operations, and Defendants would make monthly payments based on the amount of gas supplied. *Id.* at ¶13. Big Dog alleges in the Complaint that Defendants are all "affiliates" and, for purposes of the venture giving rise to this lawsuit, did business jointly as "PrimeBlock." *Id.* at ¶9.

According to the Complaint, Defendants and Big Dog also entered into an oral services agreement (the "Services Contract"). *Id.* at ¶14. In the Services Contract, Big Dog agreed to perform site preparation services to allow Defendants to operate data mining operations at the Wells, and Defendants agreed to reimburse Big Dog for such services. *Id.* In or about October 2021, Big Dog began performing site preparation services pursuant to the Services Contract, and these services included assisting with the installation of various generators, including one Jenbacher generator (the "Jenbacher") which was owned by Defendants. *Id.* at ¶15. In or around October 2021, Big Dog began supplying natural gas to Defendants, and later, in November 2021,

Big Dog began invoicing Defendants for the services provided and natural gas supplied. *Id.* at ¶¶16-17. Defendants initially paid the invoices for the services provided, but failed to pay for the natural gas supplied by Big Dog. *Id.* at ¶18.

In or about December 2021, Defendants and Big Dog began negotiating an alternative gas purchase agreement, and on or about March 14, 2022, Defendants and Big Dog executed a written gas purchase agreement (the "Gas Purchase Agreement"). *Id.* at ¶20. In this written agreement, Defendants agreed to purchase the natural gas produced from the Wells for a total purchase price of $2,800,000 (the "Purchase Price"). *Id.* The Gas Purchase Agreement further states that:

> Defendants "shall be solely responsible for all expenses, costs, and charges associated with producing the Gas, including for operating and maintaining the wells" (id. at 5.01); (b) The parties "shall maintain throughout the Term General and/or Excess Liability insurance ... for activities contemplated by this Agreement" (id. at 7.02); and (c) Big Dog "shall be entitled to terminate this Agreement by providing not less than thirty (30) days written notice to Buyer in the event that Buyer materially breaches its obligations under this Agreement and fails to substantially cure such breach within such thirty (30) day period" (id. at 2.03).

*Id.* at ¶21.

Between March 2022 and June 2022, Big Dog sent Defendants several invoices for the well operations and site preparation services it performed during this time period, however, Defendants refused to pay any of the invoices, which are attached to the Complaint as Exhibit "B". *Id.* at ¶¶24-25. The Complaint alleges that Defendants failed to repay $405,000 in cash advanced by Big Dog to Defendants between October 2021 and May 2022, and that Defendants also failed to pay the full Purchase Price under the Gas Purchase Agreement, as they paid only $2,400,000 of the $2,800,000 Purchase Price. *Id.* at ¶¶26-27.

On June 13, 2022, Defendants cancelled the insurance policy they were required to maintain under the Gas Purchase Agreement. *Id.* at ¶28. Two days later, Big Dog provided notice to

3

Defendants that it was terminating the Gas Purchase Agreement due to Defendants' multiple breaches of that agreement. *Id.* at ¶29. On or about June 17, 2022, Defendants then began removing the generators and other equipment from the Wells, and appeared to have ceased all data mining operations at the Wells, though they did not remove their Jenbacher generator. *Id.* at ¶¶31-32.

The Complaint alleges that as a direct and proximate result of Defendants' breaches of the Gas Purchase Agreement and the oral Services Contract, Big Dog has sustained, and Defendants are liable for, the outstanding balance of the Purchase Price and the unpaid invoices. *Id.* at ¶39. As to the relief sought, Big Dog requests that the Court enter an order to: (i) declare the termination of the agreements between the parties; (ii) award Big Dog monetary damages for the outstanding balance of the Purchase Price and the unpaid invoices; (iii) allow Big Dog to take ownership of the abandoned Jenbacher as abandoned property, or, in the alternative, to sell the abandoned Jenbacher to satisfy the judgment of damages; and (iv) provide such other legal and equitable relief as this Court may deem just and proper.

**II.     Legal Standard**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8(a)(2) is to give the defendant fair notice of what the claim is and the grounds upon which it rests.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

4

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 664. To avoid dismissal, plaintiffs "must allege facts to 'nudge [their] claims across the line from conceivable to plausible.'" *Mann v. Brenner*, 375 F. App'x 232, 235 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. In this regard, legal conclusions must be supported by factual allegations. *Id.*; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth"). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a complaint that provides adequate facts to establish "how, when, and where" will survive a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009). In short, a motion to dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

### III. Analysis

To state a claim for breach of contract under Pennsylvania law, a plaintiff must establish: "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225-226 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 1999 PA Super 14, 723 A.2d 1053, 1058 (Pa. Super. 1999)). Though every term of a contract need not be stated in complete detail, every element must be specifically pleaded. *CoreStates Bank, N.A.*, 723 A.2d at 1058. In determining whether the first of these elements is met courts examine whether: (1) both parties manifested an intention to be bound; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) there was consideration. *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998) (citing *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 441 Pa. Super. 281, 657 A.2d 511, 516 (Pa. 1995)). Further, in cases "involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent." *Mountain Props. v. Tyler Hill Realty Corp.*, 2001 PA Super 45, 767 A.2d 1096, 1101 (Pa. Super. 2001).

As a preliminary issue, Defendant Flamingo states that it takes no issue with Big Dog's assertion that it is a proper Defendant in this lawsuit at this time (ECF No. 19 at p. 7). However, it argues that the Complaint should be dismissed as it engages in "group pleading" by collectively referring to all Defendants in its breach of contract allegations, and further, that Big Dog has failed to adequately describe the terms of the contractual agreements between the parties. In response, Big Dog states the Complaint's allegations satisfy Rule 8(a)'s pleading requirements because Big Dog is not alleging distinct claims against each Defendant entity, but rather, it is alleging the same

claim against a discrete group of jointly-acting entities which collectively engaged in business as "PrimeBlock". Big Dog claims these entities all agreed to pay it for natural gas and site-preparation services, as evidenced by the allegation that Defendants did pay for some of the gas and site-preparation services for a time, but later stopped paying (ECF No. 1-2 at ¶¶ 18, 24–27).

Though Count I of the Complaint is styled as a single breach of contract claim, the breach of contract allegations relate to two different contracts, the written Gas Purchase Agreement and the oral Services Contract. The Court will address the sufficiency of the pleadings relating to each of those contracts *in seriatim*.

### A. Gas Purchase Agreement

Big Dog alleges it has sufficiently pleaded that Defendants were collectively engaged in business as PrimeBlock, and therefore, it may maintain its breach of contract claims under the Gas Purchase Agreement against all Defendants. However, Defendant Flamingo is the only party that appears on the face of the written Gas Purchase Agreement. "It is fundamental to the law of contracts that one cannot be liable for a breach of contract unless one is a party to the contract." *Milo, LLC v. Procaccino*, No. 16-5759, 2018 U.S. Dist. LEXIS 47040, at *8 (E.D. Pa. Mar. 22, 2018) (quoting *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 503 (E.D. Pa. May 28, 2014) (internal quotation omitted). Big Dog has not asserted any factual basis to maintain that any Defendant besides Flamingo is a party to the written contract.[1] Accordingly, the Court will dismiss the breach of contract claims pursuant to the Gas Purchase Agreement against

---

[1] Indeed, Big Dog appears to acknowledge that it may only enforce its breach of contract claim as to the Gas Purchase Agreement against Defendant Flamingo by conceding that, "at the very least… Defendants were parties to the oral agreement regarding site-preparation services" (ECF No. 22 at p. 5).

Defendants PrimeBlock Operations LLC, PrimeBlock Mining LLC, ANKR PBC, and Exponential Digital LLC.

### B. Services Contract

As to the oral Services Contract, Defendants contend that the Complaint fails to put them on notice as to why they are parties to this purported oral agreement and what their obligations were under that agreement. Defendants argue the allegations as to the oral Services Contract are also group pleading as Big Dog makes no effort to distinguish the role each Defendant may have had in agreeing to the terms of the oral Services Contract.

Ultimately, Big Dog has pleaded Defendants are jointly acting together as PrimeBlock and that they are not distinct and unaffiliated entities. The Complaint does not seek to impose contractual liability by virtue of the alleged affiliation on a non-contracting party, but rather, alleges that all Defendants were parties to the oral Services Contract. At this stage, the Court must accept these allegations as true.

Defendant Flamingo, joined by the other Defendants, further argues that the Complaint fails to adequately plead the existence of the oral Services Contract as it does not describe what "site-preparation services" means, what was included in these services, any agreed to pricing between the parties, or the manner of performance or deadlines (ECF No. 19 at p. 8).

The Court finds the Complaint adequately alleges the existence of the oral Services Contract. The Complaint sets forth that Big Dog orally agreed to perform site-preparation services for Defendants, and, in exchange, Defendants agreed to reimburse Big Dog for those services. The parties entered into the Services Contract in or around October 2021, and Big Dog began performing services pursuant to the Services Contract at that time, which included the installation

of various generators and Defendants' Jenbacher generator (ECF No. 1–2 at ¶ 15). About a month later, Big Dog started to send invoices to the Defendants, which Defendants then paid. *Id.* at ¶ 17.

The Court agrees with the Defendants that the unpaid invoices do not prove Defendants agreed to pay for the services listed therein. However, "Pennsylvania law follows the objective theory of contracts and therefore, looks to the parties' outward manifestations in determining whether they agreed to the terms of the agreement." *Great N. Ins. Co. v. ADT Sec. Servs., Inc.*, 517 F. Supp. 2d 723, 740 (W.D. Pa. 2007). When dealing with an oral contract, "courts must look to surrounding circumstances and the course of dealings between the parties, to ascertain the intention of the parties." *Westinghouse Elec. Co. v. Murphy, Inc.*, 425 Pa. 166, 228 A.2d 656, 659 (Pa. 1967) (internal citations omitted); *see also, Deemac Servs., LLC v. Republic Steel*, Civil Action No. 2:20-cv-1466, 2023 U.S. Dist. LEXIS 14818, at *17-18 (W.D. Pa. Jan. 25, 2023) (denying summary judgment on breach of oral contract claim as "determining whether the parties reached a mutual agreement—and thus, established an enforceable contract—will require the resolution of factual questions"). Here, the Complaint pleads Defendants agreed to the oral Services Contract and paid invoices to Defendants pursuant to that agreement. Accordingly, the Court will deny the motion to dismiss as to Big Dog's claims against the Defendants relating to the oral Services Contract.

**IV.    Conclusion**

At this stage in the proceedings, Plaintiffs need only set forth sufficient facts to state a claim to relief that is plausible on its face and allows the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. The Court finds the Complaint sets forth a breach of contract claim against Defendant Flamingo as to the Gas Purchase Agreement, a breach of contract claim against all Defendants as to the oral Services Contract, and a corresponding request for declaratory relief. The Court will dismiss the claims against Defendants PrimeBlock

Operations LLC, PrimeBlock Mining LLC, ANKR PBC, and Exponential Digital LLC under the Gas Purchase Agreement. Defendants are directed to file their answer and affirmative defenses on or before June 15, 2023. An appropriate Order follows.

Date:

_____
Stephanie L. Haines
United States District Judge